May it please the Court. John Corzine here from Wake Forest Law School on behalf of Defendant Newbold. Under Local Rule 46A, I'd like to introduce the two third-year law students who will be appearing today. First, Matthew Cloutier. He'll be addressing the first issue in our brief about the Analog Act and your questions on that. And then secondly, James Lathrop. He'll be addressing the second issue in our brief on the resentencing and your questions on that. Thank you, Your Honor. Thank you. Mr. Cloutier. May it please the Court. My name is Matthew Cloutier, and I represent Defendant Joseph Newbold. As Professor Corzine explained, I will be addressing the sufficiency of the knowledge requirement that the government brought in their argument unless Who's addressing the mandate rule? In part, yes, Your Honor. Pardon? In part, yes, Your Honor. You're addressing that? Yes. All right. Go ahead. Unless the Court has any questions regarding the government's procedural bar arguments, I'd like to move forward to addressing the merits. I've got questions about that. Yes, Your Honor. You've got a real problem with that, don't you? That would not be our contention, Your Honor. No, but you didn't raise any of these issues that the government says are barred by the mandate rule. You didn't raise them in the district court. That's correct, Your Honor. We're a court of review, not of first view, as a general proposition. Certainly, Your Honor. However, we would argue that as the United States Supreme Court stated in the United States v. Arimony, that the mandate rule doesn't apply when there is a controlling authority that has made a contrary decision of law applicable to the issue. But that law was established, indeed, it was established before we vacated and remanded in this case. I'm sorry, Your Honor, could you rephrase that? The McFadden case came out before Newbo did. McFadden came out in June of 2015. It did, Your Honor. By the Supreme Court. And our remand in this case, earlier remand, came out on June the 30th, the same month. McFadden was out there when you had a hearing to resentence before Judge Schroeder, correct? I believe so, Your Honor. And nothing was said about McFadden. I believe so. Now you come up here and you say the indictment is bad. That's correct, Your Honor. You say the plea proceedings were defective. Correct. None of which has ever been presented to or addressed by a district court. That's correct, Your Honor. But, again, we would contend that... So why isn't that forfeited, barred, waived, barred by the mandate rule? There are multiple problems with that. When we vacated specifically for resentencing. That's correct, Your Honor. But, again, we would argue that the mandate rule doesn't apply because this is the first chance Mr. Newbold had had to raise this controlling authority. Well, you could have raised it with Judge Schroeder. That's what I'm talking about. You didn't raise it in the district court. There was a sentencing proceeding in the district court and it wasn't raised. That's correct. None of this. That is correct. And I honestly... And he could have said whether the mandate rule applies or whether McFadden was enough of a change in the law to create an exception to the mandate rule and let him address the Rule 11 proceedings or the alleged defect in the indictment or whatever he wanted to raise that went beyond resentencing. He could have addressed whether you could do that or not. And he didn't get the opportunity to do that. And so that's what I say. We consider appeals. And we have that. You have to preserve things because otherwise you're mousetrapping the trial judges, the district judges. They're supposed to get a first crack at it. And here on these issues, you didn't give them a first crack at it. That's correct, Your Honor. And I honestly don't have the information to sufficiently explain how that came to be. But either way, we would again argue that the mandate rule does not par Mr. Newbold's appeal specifically because, as this Court has also pointed out, that this controlling authority exception does apply when there is intervening Supreme Court or intervening authority or binding authority that is contrary to the decision relied on by the prior court. And here we would again argue that that is the United States Supreme Court decision in McFadden, which clearly established a contrary decision with regard to the knowledge requirement necessary to convict under Section 841A, the statute under which Mr. Newbold was convicted. And as Your Honor did mention, we would argue that his conviction was insufficient, both due to the insufficiency of the indictment as well as the plea colloquy and finally the factual basis at the time of Mr. Newbold's plea. What was the third part? The factual basis at the time of Mr. Newbold's plea, Your Honor. We would argue that all of these documents failed to allege the necessary knowledge as far as Mr. Newbold's knowledge concerning the substance he distributed at the time of his plea. Of the three alleged defects that you point to, if one of them satisfied the procedural requirements of the guilty plea and or the indictment, then you have no ground for complaint, do you? You have to show that none of the three satisfied due process requirements. Your Honor, we would contend that all three are insufficient and even some of them standing alone would be enough to justify this appeal, specifically if the indictment were insufficient, again, in alleging the facts as the Supreme Court. But can a guilty plea colloquy cure a problem in the indictment? Only when the plea is voluntary and intelligent, Your Honor. Well, that's true about any plea with respect to an alleged element of the offense. The judge's colloquy with the defendant at a guilty plea can either cure, depending on how you want to put it, can either cure the problem or it can render inapplicable in a plain error type of review, correct? It can, Your Honor. But again, here we're dealing with a situation in which this necessary knowledge requirement wasn't conveyed to Mr. Newbold at the time of the plea and we would consequently argue that that plea was not voluntary and intelligent and consequently should be considered invalid and should be vacated. But you're not saying structural error, do you? Is that structural error? How do you get around what Judge Davis asked you in terms of does the plea occur unless it's structural error? Again, we would say that the plea is not valid if it was not voluntary. But does it beat the standard of being a structural error, does it? I'm sorry, Your Honor. Could you clarify? One, to make it simple, one that is so important to the constitutional protection such that without which fundamentally it's not. For example, let's say there was a amount of evidence against you in a crime and clear, it's on video and confession, but we didn't give you a lawyer at all, for example. It would be structural. It's the structure of government and the whole process, and there are very few of those. But you think, you know, because Cotton, in the case of Cotton, the Supreme Court said it didn't even allege, the indictment didn't allege a federal crime, but the plea occurred. I mean, go ahead. I mean, those certainly would be more significant problems than we'd have here, Your Honor. However, we would argue that this problem is also sufficient. As the Supreme Court stated in Bosley v. The United States, again, a guilty plea is valid only as long as it is voluntary and intelligent. And here the district court did not properly inform Mr. Newbold of the necessary elements the government would have to establish in order to show his guilt under Section 841A. And in Bosley, for example, the defendant contended that his guilty plea wasn't knowing and intelligent because he was misinformed by the district court as to the nature of his crime. And the Supreme Court in that case determined that because he wasn't informed correctly as to the specifics of a given element that was later clarified by the Supreme Court, much like what we have here, they found that his plea was consequently not voluntary and intelligent. So we would ask that this Court do the same thing with regard to Mr. Newbold's guilty plea. And again, it's important to remember that we're not Are you giving up on the indictment? You're focusing on the guilty plea? We're not giving up on the indictment, Your Honor. You're not giving up on the indictment. You say the indictment's insufficient. Correct, Your Honor. It was in the language of the statute. It was in the language of the statute, and that's certainly what the That makes it sufficient. It can make it sufficient, Your Honor. As the government does point out and as Your Honor pointed out, it is often sufficient when it tracks the language of the statute. However, in Hamling v. The United States, the case the government cited for that proposition, the Supreme Court went on to state in the same sentence, as a matter of fact, that the general rule applies only so long as, quote, those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offense charged. And here there was uncertainty at the time of the indictment as to what the necessary knowledge element for conviction would be. It said knowingly. They did say knowingly, Your Honor. It said knowingly and intentionally. That's what the indictment said, isn't it? That's correct, Your Honor. That's what the statute said. But again, under McFadden, there is a more stringent knowledge requirement. It's not necessary to be shown in order to convict. They required specific knowledge that the defendant knew he was distributing. He bragged about to the agents or the undercover people, he bragged about knowing everything about the law. He did, Your Honor. About these Tony drugs. He did, Your Honor. He knew all about it. He knew about the law and everything. But under McFadden, he would have to know that it was a controlled substance analog, either by the first method they suggested in that decision, that he would know it was either controlled under the Controlled Substances Act or by operation of the Analog Act. Do you agree, you don't agree, that the mandate rule, you don't agree about the mandate rule, but you agree that if we review this, if we get to your issue, that we have to look at it under plain error? Correct, Your Honor. So you say it's plain error? We do. All right. That's a pretty stiff standard in and of itself. It certainly is, Your Honor. But we would argue that this is sufficient to meet that standard because, again, the indictment would have to allege something more than simple knowing distribution of this substance. It would have to be knowledge that the substance was controlled either by operation of the Analog Act or the Controlled Substances Act, or it would have to show that he knew all of the features of the substance that make it a controlled substance analog. And under McFadden, that would be specific knowledge that the substance had comparable chemical effects to a controlled substance as well as a comparable chemical structure. And there were no allegations sufficient to establish these facts in the indictment or the factual basis. Could you raise this issue of McFadden independently of this proceeding? I'm sorry, Your Honor. Could you raise this, your client, this McFadden issue independently of this proceeding and get a trial judge to look at it first? I'm sorry, Your Honor. I honestly don't know. You don't know how? I do not. If you could, it would be better off, it seems like, rather than having a fails court rule than possibly rule against him. If you got it to a trial judge first, maybe you'd have a better shot at it. The government might not even appeal. That certainly would be easier, Your Honor. You might foreclose him here and foreclose a whole bunch of other people. Certainly, Your Honor. Anyway, I'm musing. I see my time has run. And your right came on. Thank you. Mr. Lathrop. May it please the Court. My name is James Lathrop, and I represent the appellant, Joseph Newbold. Mr. Newbold has not received what is considered standard care for his hepatitis C. This court must decide whether his sentence was substantively unreasonable in light of this denial of care. Thus, we ask this court to vacate Mr. Newbold's sentence and remand for resentencing. Mr. Newbold's sentence was substantively unreasonable for two reasons. First, Mr. Newbold has not received the drug Sovaldi, considered the standard of care for those with hepatitis C. And second, the sentencing court knew he was not getting this treatment, yet did not reduce his sentence to reflect this lack of standard medical care. First, a reduced sentence was necessary to enable Mr. Newbold to receive Sovaldi, considered the standard of care for those with hepatitis C. Both case law and medical communities recognize the severity of hepatitis C. In the case Ibrahim v. District of Columbia, the D.C. Circuit recognized that hepatitis C is a, quote, chronic and potentially fatal disease. Hepatitis C, according to the CDC, is the leading cause of cirrhosis and liver cancer and the most common reason for liver transplants in the United States, which brings us to the drug Sovaldi, which came out around the year late 2012, early 2013, and changed the hepatitis C treatment market. The drug Sovaldi is- What is the nexus between a hypothetical reduction in his sentence of, let's say, 12 months or 15 months, 24 months, and his access to the treatment that you claim he's entitled to and should have? Well, the nexus, Your Honor, is currently the Bureau of Prisons does not provide the drug Sovaldi for any prisoner that has what's called an APRI score of under 1.0. But what does that have to do with the length of the sentence? Mr. Newbold has-he's high risk because, according to University of Washington researchers, old age, years left untreated puts somebody at high risk for hepatitis C, and if Mr. Newbold was released, he would be able to obtain the drug Sovaldi on his own and effectively cure his hepatitis C. So, in other words, your argument on substantive reasonableness is he should have been sentenced to time served. Yes, Your Honor, that is our contention, a downward sentence. I believe at the resentencing hearing the request was for 143 to 144 months, and that goes along with 18 U.S.C. 3553, which requires the courts to consider the need for the defendant to be provided with medical care. And it's our contention that in the sentencing hearing in 2015 with Judge Schroeder, the court did not appropriately allow this downward variance, and it's reflected in the record when the sentencing court discusses the mitigating factors. On page 128 and 129 of the joint appendix, Mr. Newbold made clear that he was infected by hepatitis C and it was not being treated for the last nine years while he was in prison care. And the Judge Schroeder's response when he gave the mitigating factors, rather than he stated that it was mitigated due to stable employment and the fact that he has a college education, at no point did he mention this hepatitis C. Instead, on page 145 and 146 of the record, the sentencing court stated, quote, I appreciate the problem with your hepatitis C, and I hope that it holds off long enough so that when you are released, you can get whatever treatment you wish to get at that point when you are out of prison. And the issue with this statement is that is not showing a reasonable consideration that should he have been released, he would have been able to get effective care for his hepatitis C. So what does appreciate mean? Appreciate, Your Honor, is show in the record a reasonable consideration. And appreciate, in the case of hepatitis C, is recognize that he is not getting the drug in prison but would be able to access the drug outside of prison. No, I'm asking you, when the judge says I appreciate that circumstance, what does that mean? You're saying that he didn't give proper 3553 consideration. But what does appreciation mean in that context? Your Honor, in that context, it seems to reflect that he feels for Mr. Newbold's situation. You would have said I sympathize, wouldn't you? The word is appreciate. What does that mean? Your Honor, appreciate means I recognize or I see that there is a problem with hepatitis C. Appreciate really in the denoted means to understand something. Yes. We use connotative of the means. I thank you for that. But it means an understanding that it appreciates your argument. It means I understand your argument. Yes, Your Honor. And he did understand that hepatitis was a severe disease. And the fact that he did understand it. And then he kind of had two bites at the apple when he stated the mitigating reasons. And then on page 222, I believe, of the record, in the resentencing statement of reasons, in both those cases he did not list Mr. Newbold's hepatitis C as a mitigating factor. And according to 3553C, it's required anything that is discussed at length, not a whole opinion being written about it, but just a brief explanation of why the judge either did consider a major factor or did not consider a major factor, it's at least listed and stated in the statement of reason or at the resentencing hearing. And in this case, the sentencing court did not, though, as Your Honor points out, did use the word appreciate on page 145 and 146 of the record, did not state it in the reasons for a reduced sentence. So we would contend that he did not properly and unreasonably weighed Mr. Newbold's hepatitis C. Turning to what he did say on page 143 and 144 of the record, and this is where I think the appreciate is reflected, he states, I will recommend Mr. Newbold be designated to a facility where he can continue to be examined and receive treatment for hepatitis C. And though he does use the word appreciate, the fact that for the last nine years, and as defendant's counsel made clear on page 127 and 132 of the record, he had not been getting this treatment. And he had not been getting this treatment, and the fact that he had not been getting this treatment, it was known to the court, and the court still did not mitigate based on these circumstances, shows it was an improper weighing of the 3553A factors, particularly the need for the defendant to be provided with medical care. There are Eighth Amendment remedies, right? Yes, Your Honor, and Judge Schroeder did point out these Eighth Amendment remedies, and there are, but the reason we did not bring these Eighth Amendment remedies is that would either come in the form of relief of an order for him to be provided with a drug sobriety or potential monetary damages, but Mr. Newbold knows he can get this drug more efficiently and quicker if he is just released from prison and can get it on his own. Thus, we ask this court to vacate Mr. Newbold's sentence and remand for resentencing because his sentence was substantively unreasonable in light of this denial of care for his hepatitis C. Do you know what his expected release date is? His July 2017, but Your Honor, I would point out we originally brought this in 2015. I understand. Thank you, Your Honor. Thank you. Mr. Galliano? May it please the Court. Opposing counsel? Your Honors, you should, in this case, we would respectfully ask that the Court, in this case, affirm the conviction of the defendant as to Count 1 related to the Analog Act violation and as to the sentence imposed, affirm that sentence of 165 months as substantively reasonable. Judge, in this case, this defendant received a reasonable sentence. I'll start with that first since opposing counsel just finished with that. Is he likely to be released to community confinement sometime in the next few weeks? Normally, the Bureau of Prisons puts you in a community confinement in the last six months. Do you have any reason to doubt that that's likely to happen? No, Your Honor. No, Your Honor. I would suspect that he would be released to community confinement within the next six months or within the next few weeks because his release date is July. Right. So given that circumstance, Judge, to the extent that he, let me back up. One of the things related to the argument that's a real problem with the argument is that the record as to the sentencing shows that the defendant provided certain documents. One document related to his medical history back in the 1990s, a document showing that he sent a letter to the doctor at BOP saying that basically it was cruel and unusual that he wasn't receiving Sovaldi, a letter that he sent to his representative in Congress saying that he was denied this Sovaldi drug, and then the reply letter from the warden at BOP facility where he was housed indicating the reason why he wasn't receiving the drug. And that is that based on their test, as recently as 2014 when he received a care, basically a checkup that also included an APRI test to determine the status of his disease, that he was below .5, which was their protocol for determining when an individual would receive that particular drug. And so he had an opportunity to present particular evidence at the sentencing hearing. And the one thing that he did not do, even though he stated or counsel stated at the sentencing hearing that he would, of course, if released, immediately go out and get this drug, that presumes that he would get it. But there's no evidence in the record about whether or not a physician on the outside would, in Mr. Newbold's case, actually prescribe Sovaldi. There's no evidence. Why wouldn't they? And again, Judge, there's got to be more than just I have a disease and therefore I'm going to get this particular drug. There may be issues related to whether or not, based on his prior alcohol abuse, based on No, no, no, counsel. It is clear that Hepatitis C is a chronic and progressive disease. You're saying, okay, we know it's going to, you're going to deteriorate because we know it's progressive. Well, you haven't deteriorated enough for us to give it to you. You have to get closer to the end of the line before we give it to you. And we already know that you, am I correct, is he still positive for Hepatitis C? He is. Yes. Do you dispute that Hepatitis C is progressively degenerating and leads to fatality? Right? You agree with that? That's correct. All right. So you're saying now you've got to get closer to the graveyard before we give you the medicine that we know that will stop the progressive degeneration because of the disease that you have? Does that make any sense? Your Honor, I'm not saying that he has to get closer to the graveyard. The issue is... That's where he's going. Let's call it what it is. We try to give things a different word. Let's call it what it is, the graveyard. That's what we're talking about, death. And you're saying you're not close enough to die yet for us to give you something we know that will stop that progression to the grave. That's the logic for our prison system? Your Honor, I would argue to you that as far as this defendant is concerned, while the disease is a progressive disease, there's nothing to suggest that this defendant, who has had the disease for 20 years, has progressed in the sense of his disease has gotten worse in any way, such that he's got an APRI score above .5. And again, that goes to the issue of based on the defendant's argument, he's essentially putting Judge Schroeder, the district court judge, in the position of based on scant facts, beyond the fact that he has a disease, of saying that's a reason right now to let this defendant out. That because he has a diagnosis and because the protocol in place at BOP says he has to have a certain score and he doesn't, regardless of that, the fact that he has this disease would be a basis for him to be let out. You don't think the judge could order them to give it to him? I do think the judge could order him. That's the fallacy of false dilemma. You're saying that the only result is he has to let him out. No, the order that the judge could give, for example, is give him the known treatment. But that's not what the defendant asked for at sentencing, as the court well knows. What the defendant asked for, and of course that's the problem, is that in every case if the rule is that you're not receiving the treatment that you want based on BOP protocol, then you could get a reduced sentence or be let out because they're not providing that particular drug to you. And, of course, that can't be the standard. That can't be the rule related to these cases. And so given the evidence in the case, or I would argue, Your Honors, the lack of evidence related to the status of this defendant's disease and whether the judge abused his discretion, because we're talking about the judge abusing his discretion, it's presumed reasonable that what the judge did when he implemented the sentence was reasonable. It was a within-guideline sentence. And the defendant would argue to you that because he didn't get an eight-month variance at the time, that his sentence was unreasonable. And, again, Your Honors, that would be inconsistent with the trial judge or the district court judge. I'm sorry. What do you mean by an eight-month variance? Your Honor, that was what they requested at the time of the original sentencing in order for him to get time served. At the original sentence? I'm sorry. At the resentencing. At the resentencing hearing back in December of 2015, the defendant asked for an eight-month downward variance from the bottom end of the range so that he could get time served. So he had already served at that point, what, 12 years? No, no, Your Honor. No, at that point he had served because he was sentenced in 2006. And so at that point he'd served nine years? Nine years. Somewhere in that range, I believe, Your Honor. Nine years. That's correct. Go ahead. No, I'm sorry. Go ahead. I yield to you. Go ahead. He was 55 years old at that point? He was, Your Honor. Okay. So he served nine years. He just wanted to get out early enough to be able to take the drug he believed that could save his life. That's correct, Your Honor. That's correct. And that's substantively reasonable to refuse that. Your Honor, I would argue that it is substantively reasonable for the court to consider, as Your Honor pointed out related to the issue as it was raised and the evidence that the court had, Your Honor pointed out about the appreciate, I appreciate your situation. And I would argue that the reason that this defendant did not get a reduced sentence is the court considered his showing and determined that that was not a sufficient reason to give him a variant sentence. What was not sufficient? The showing itself. The fact that simply because he was not receiving the specific drug at the time based on BOP protocol, that that required him to get a lower sentence. The court can consider it. The court doesn't have to say that that is the driving force behind the sentence I'm going to give you now. And as the court knows, in looking at the record from the sentencing, when Judge Schroeder announced his sentence, he looked at the factors in 3553A and talked primarily about the issues related to this defendant's prior record, the nature and circumstances of the offense, the need to promote respect for the law, provide just punishment. Look at it this way, counsel. Let's say if he was a rich person and he's in prison, he's done nine years, and he finds out, and it's clear, undisputed, that let's say Wake Forest is his, so I won't say Duke, let's say Mayo Clinic. The Mayo Clinic has something that will help him, but he has to be there within the next three or four months to get that window of opportunity to be cured. You tell me a case does not change in terms of what substance or reason when you say, no, I'm going to make you spend these 12 more months and not let you out in the next two months. That's a big difference. It's not just 12 months, it's the difference between a window of living. You see what I'm saying? It's got to have some context. He's served nine years. If you let him out, for example, within two months, he can get this treatment at the Mayo Clinic. But if you wait 12 more months, he may be dead. But you say, oh, but it's only a few months. But it's not, because that's out of context. If you understand the human condition, it's quite different under those circumstances. It's not just six more months. It's the difference between life and death, right? I'm just going to acknowledge, don't you have to put in some context other than just months? I do, Your Honor. I certainly appreciate the context, and the other part of it is, of course, that the defendant was getting tested along the way. So, again, sort of going back to the court's point, you know, the analogy is that, and I understand the court's point, that if he doesn't get this treatment right now, in 12 months, he's going to miss the opportunity. The issue is that there's no evidence in the record that his disease has progressed or did progress in the interim, such that he immediately, we know, that he's in terrible shape and is going to get cirrhosis and all those things. That's the difficulty, I would argue, related to the context argument. Because all the court had before it was the information at the time, not information. Did the court have a government position on this? Related to? The sentence request? Yes, Your Honor. And what was the government's position? Your Honor, the government's position was that the defendant's request was, should be denied. The government opposed the defendant's request. Your Honor, because it was. And the court, I mean, courts take seriously, as courts should, government positions, probably as much at sentencing as anywhere. And so it's not true that that's all the court had before it. In terms of evidence, that's all the court had before it. But the government had more than just the evidence. The court had the government's position. That's true. That's true. And, again, because given the evidence in the case, what the defendant. . . In a situation like this, because it's the same attorney general who supervises U.S. attorneys and assistant U.S. attorneys that supervises the Bureau of Prisons. So in a way, not to put too sharp a point on it, it's almost like a conflict of interest, isn't it? It's almost like the assistant U.S. attorney is standing there actually representing the Bureau of Prisons rather than focused on 3553A factors, what is best for society and what's best for this defendant in an individualized sentencing scheme. And perhaps, perhaps really what's at issue is the fact that if we're talking about a cruel and unusual punishment, that the sentencing was not the forum for that anyway. So to the extent that the court's saying the government, that is the U.S. attorney's office, is standing in for BOP, if his argument is a claim against BOP related to an Eighth Amendment violation that he filed separate from the sentencing, that's one thing. But is the government in that position at the sentencing supposed to do something other based on Because BOP's protocol is unreasonable. No, the government could say something like, Your Honor, government will stand silent on this request. You know our position at the original sentencing. The man served nine years already. He's 55, 56 years old, 58 years old. Court, judge, do what you think is best. Government sometimes does that. Certainly, certainly. And I think the other part, too, is it goes to the issue of whether or not he would immediately actually go out and get the drug and qualify. Because we don't speculate. That's the question of what the court would have been persuaded to do. I mean, the court didn't even impose the bottom of the guideline here. No. I mean, let alone a variance. That's correct. Didn't even go to the bottom. That's correct. And to your point, obviously the district court looked at the previous sentencing. It's mentioned on the record that the district court, Judge Schroeder, looked at Judge Osteen's original sentencing in determining or looking at the questions related to this defendant's long criminal history and things of that sort. I mean, he had 16 prior drug felony convictions, Judge. And so it was not an individual who was a newcomer to the drug activity or the criminal justice system. He had a prior federal conviction. And so when the court looked at that, when Judge Schroeder looked at that, obviously he can look at, as the court well knows under 3553A, all of those factors including the history and characteristics of the defendant. Your Honor, turning to the McFadden issue, would argue that the defendant cannot meet plain error and that there is the procedural bar based on the mandate rule. Which one are you arguing? You can argue both. Or are they the same thing? No, I would argue that they're two different things, but I would certainly argue that If the mandate rule applies, is that the end of it on the McFadden issue? Is plain error then not in the picture? Wouldn't have to review because there's a procedural bar. The review is bar. That's correct. Mandate rule applies, McFadden issue is not considered. Correct. Is that your primary point? No. What's your primary point? The primary point would be that it's not plain error. So you'd want us to go to the plain error thing? I would not want you to go, Your Honor. So you're saying you're on the mandate rule? I'm sorry? Why are you giving up the mandate rule? I'm not. I'm saying that they're both applicable. I'll argue. Well, if the mandate rule is applicable, plain error is not applicable. That's correct. Well, then which one do you want us to apply? I want you to apply the mandate rule. That's what I'm asking. Yes. So you're saying don't reach plain error? That's right. But because it's oral argument, I want the opportunity to address both. Well, you're arguing plain error in the alternative. That's correct. Which you put in your brief. Yes, Your Honor. That if we do need to review it or want to review it, it's a plain error review and it doesn't satisfy plain error. That's right. Where does it fail plain error? On which prong? How far down the list do you go? There's four of them. Your Honor, I would argue that. The first one or the fourth one or somewhere in between? Your Honor, I would argue that at worst that there is a plain error at some point, but that the defendant cannot meet the third prong, that is, that affects his substantial rights. There's no evidence. You said at worst. Is that your main point then? So you're giving up the first two? I would not be giving up the first two. I'd be happy to go through those. Where does it stop? Are you not conceding error? No, Your Honor. No, Your Honor. If we assume error, is it plain? And I would argue that if the court is considering McFadden, then it can be considered plain as to the question of whether or not he had the knowledge, right? But I would argue that there is evidence within both the plea colloquy as well as the statement of the facts or the factual basis on the record, the full record that the court would consider in determining whether or not this affects him. You're talking about what's in the plea colloquy and the statement of facts or what's in the PSR? Well, I would include the PSR. Does the record that's left show that he knew all about this analog act and this analog law? He explained it to somebody. He did. Is that in that part of the record? It's not in the factual basis, Your Honor. Pardon? It's not in the factual basis. It's not in that factual basis. That's correct. So how do you get around that? Because when the court looks at whether it affects the defendant's substantial rights, the court looks at the entire record. That's the third prong. That's correct. So you're giving up the plain error. You're giving up the first two prongs and saying you're planting your feet on the third one. Your Honor, as to the factual basis, that would be at issue. I would argue as to the plea colloquy that there is not plain error because at the time that Judge Osteen described the nature of the charge to the defendant, he talked about the fact that the defendant would knowingly distribute 5-MEO-AMT, that it was a controlled substance. Judge Osteen actually called it a controlled substance and that it was for human consumption and that he had to know that he was distributing some kind of a controlled substance. And so that cannot be plain error because even under McFadden that survives. So now you're arguing the second prong. I'm just saying that they're different as to different parts of whether it's under the plea colloquy or under the factual basis because even if the fact, I see that my time is expiring, because even if the court is looking at just the factual basis, that's not as to the third prong, the affecting substantial rights, that doesn't, the defendant can't meet his burden because the full record, that is the PSR, includes that important information that made clear to the defendant  said, I knew this was illegal. As to the analog drug, I knew it was illegal. I knew it was wrong. And, Your Honor, for that reason would ask the court affirm both the conviction and the sentence in this case. Thank you, Your Honors. Thank you. Your Honor, we had signed up for Mr. Cloutier to have our two minutes of rebuttal, but with the court's indulgence, could Mr. Lathrop, DeMore, address the hepatitis C issue? Yes. May it please the court. First off, Your Honors, to address that it is just this defendant, currently according to a recent journal by the Wall Street Journal, only 200 out of the over 9,000 federal prisoners with hepatitis C are being treated with drugs such as Sovaldi. So only 200 out of 9,000. So this is not a problem that's individual to Mr. Newbold. Hepatitis C is an epidemic throughout the prison system. Secondly, Your Honor, the APRI score that was discussed is something akin to not filling up a gas tank until the light is absolutely flashing and you're not near a gas station. The World Health Organization finds that every person with hepatitis C should be treated in terms of standard care with drugs such as Sovaldi. So basically Mr. Newbold is not getting the standard care. And to clarify the position of the other side from the resentencing, the other side stated that this is an issue of preferred treatment versus what the prison system provides. And this is not a preferred treatment. This is the standard treatment for those with hepatitis C, the drugs Sovaldi. And finally, Your Honor, Judge Davis, to address your concern about his if he goes to a halfway house with the six months left, he will still be under the Bureau of Prison's care for health, so he will still have another six months of being denied the drugs Sovaldi. And with a cloudy insurance market in the future, it's important to give him access to this drug through vacating his sentence and remanding for resentencing. Thank you, Your Honor. He's not eligible for Medicaid if he's in a community detention center? I do know that Medicaid is not available in the prison system. I am not positive in the halfway house, but I do know the Bureau of Prison is still under his care. So I believe that is what it is. Thank you, Your Honors. Thank you. I note that Mr. Carson and Professor and students, Cloutier and Lathrop, you are court appointed. And I want you to know on behalf of the court, we thank you so much for your services because we couldn't do our job without your very able services. And Mr. Gallion, thank you on behalf of the government for ably doing so there. Thank you so much. We'll come down to Greek Council. And I would say that the demon deacons acquitted themselves well today. We'll come down to Greek Council and then go to our next case. Congratulations.
judges: Roger L. Gregory, Robert B. King, Andre M. Davis